RECEIVED USDC
CLERK, CHARLESTON, SC
2018 OCT 25 PM 1:27

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Palmetto Health, | ) | Civil Action No. 3:17-cv-2807-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Nucor Corporation Group Health Plan, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The matter is before the Court for review of Defendant Nucor Corporation Group Health Plan's decision to deny a claim for benefits under an insurance policy governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 ("ERISA"). The parties filed a joint stipulation (Dkt. No. 27) and cross-memoranda (Dkt. Nos. 26, 28) in support of judgment pursuant to the court's Specialized Case Management Order for ERISA cases. The parties agree that the court may dispose of this matter consistent with the joint stipulation and memoranda. (Dkt. No. 27.) For the reasons set forth below, the Court affirms the denial of benefits.

I. **Background**

On Sunday, December 7, 2014, Leon T. Jackson was injured in a motorcycle accident and admitted and treated at Palmetto Health Richland from December 7, 2014 through December 20, 2014. At the time of the accident, Mr. Jackson was employed by Nucor Corporation, which is the administrator and sole fiduciary of their self-funded health plan, Defendant Nucor Corporation Group Health Plan ("Group Health Plan"). (Dkt. No. 27-2 at 186, 196 – 197.) Mr. Jackson was a participant in the Group Health Plan. In South Carolina, Nucor contracted with Blue Cross Blue Shield of South Carolina ("BCBSSC") to manage health care and claims administration services for the plan. (*Id.* at 146 – 147.)

While at the hospital, Mr. Jackson's blood was collected and tested for alcohol. The test showed that Mr. Jackson had an elevated ethyl alcohol level which, if accurate, was above legal limits. Palmetto Health submitted information to BCBSSC to request coverage for acute care services. In a letter dated December 18, 2018, BCBSSC denied coverage for the requested services because the Health Plan had a policy exclusion for intoxication. Mr. Jackson executed an assignment of benefits and designated Plaintiff Palmetto Health as his authorized representative under ERISA. (Dkt. No. 27-1 at 8, 20.) After Mr. Jackson was discharged, a claim for benefits was submitted to BCBSSC, which was denied based on the same exclusion in the plan. On October 21, 2015, the denial of benefits was upheld on review.

After the denial, it was discovered that BCBSSC had applied the incorrect plan documents to Palmetto Health's claim for coverage. The operative plan, instead, was the Nucor Corporation Health Plan with an effective date of January 1, 2014,[1] ("2014 Plan") which did not include any policy exclusion for intoxication. (Dkt. No. 27-2.) The 2014 Plan, however, included the following relevant language. First, the 2014 Plan provided discretionary authority to Nucor:

> The *Group Health Plan Administrator* is the sole fiduciary of the *Group Health Plan*, and exercises all discretionary authority and control over the administration of the *Group Health Plan* and the management and disposition of *Group Health Plan* assets. The *Group Health Plan Administrator* shall have the sole discretionary authority to determine eligibility for *Group Health Plan* benefits or to construe the term of the *Group Health Plan*.

(Dkt. No. 27-2 at 175.) The Plan further stated that it would "not provide benefits" for:

> Any condition, disability or expense sustained *as a result of being engaged in*: an illegal occupation, commission or attempted commission of an assault *or other illegal act*, intentional or accidental atomic explosion or other release of nuclear energy, whether in peacetime or wartime, participation in a civil revolution or a

---

[1] It seems that BCBSSC may have initially identified the Nucor Corporation Health Plan with an effective date of January 1, 2012 as the correct plan. However, the parties agree and stipulate that the operative health plan is the 2014 Plan. (Dkt. No. 27 at 2 – 3.)

> riot, duty as a member of the armed forces of any state or country or a war or act of war which is declared or undeclared.

(*Id.* at 157) (emphasis added).

On November 13, 2017, Palmetto Health renewed their request for coverage. In support of the request, Palmetto Health argued that the collision was not the result of an "illegal act" as the police report and subsequent blood test did not sufficiently confirm that Mr. Jackson was driving under the influence. Palmetto Health included as evidence: an affidavit from Mr. Jackson; a review of a police report and hospital records; an accident reconstruction report prepared by an individual hired by Mr. Jackson which found that he had not been impaired, and; a payment from the insurance carrier of the other driver.

On December 18, 2017, BCBSSC denied coverage under the 2014 Plan, relying on the "other illegal act" exclusion since BSBSSC determined that Mr. Jackson had been driving under the influence. In reaching its conclusion, BCBSSC relied on: Palmetto Health's request for coverage; the prior coverage determinations; a traffic collision report prepared by a police officer; a test from the hospital showing an elevated alcohol level; an affidavit from Mr. Jackson stating that he had been charged with driving under the influence but the charge had since been dismissed and expunged; the accident reconstruction; the payment from the other driver's insurance; the 2014 Plan; the administrative record from the prior adverse benefits determination; the affidavit of the medical opinion of Dr. William Harms, BCBSSC Vice President of Medical Affairs, and; an article on the difference between blood drawn for legal and medical purposes. The letter denying coverage discussed Palmetto Health's arguments but found that the evidence indicated that Mr. Jackson had been driving under the influence, an illegal act, which resulted in his injuries. On February 12, 2018, Palmetto Health requested a review of the determination. BCBSSC upheld their determination to deny coverage, relying on the same administrative record and adding

Palmetto Health's request for review and an affidavit of an additional doctor working for BCBSSC, Dr. Michael Lawhead.

Palmetto Health filed a Complaint to review the denial of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B). (Dkt. No. 1.) The Parties filed cross-motions for judgment. (Dkt. Nos. 26, 28.)

## II. Legal Standard

### A. Summary Judgment

A district court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

### B. Review of Denial of Benefits

In their joint stipulation and memoranda, the parties agreed that the Court should apply an abuse of discretion standard. (Dkt. Nos. 26 at 4; 27 at 2; 28 at 28 at 8.) Under the abuse of discretion standard, a court will uphold a discretionary determination provided it is reasonable. *See Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 359 (4th Cir.2008) (citations omitted). This is true "even if the court itself would have reached a different conclusion." *Smith v. Cont'l Cas. Co.*, 369 F.3d 412, 417 (4th Cir.2004) (citations omitted). An administrator's decision is

reasonable if it was the result of a "deliberate, principled reasoning process" and is "supported by substantial evidence." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir.2008). Substantial evidence is that which "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance and that 'a reasoning mind would accept as sufficient to support a particular conclusion.'" *Donnell v. Metro. Life Ins. Co.*, 165 F. App'x 288, 295 (4th Cir. 2006) (citations omitted).

The Fourth Circuit set forth eight nonexclusive factors for a court to consider when reviewing the reasonableness of an administrator's decision:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342 – 343 (4th Cir. 2000). Finally, the "assessment of the reasonableness of the administrator's decision must be based on the facts known to [the administrator] at the time." *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 608 (4th Cir.1999)

### III. Discussion

Palmetto Health, in general, argues that the plan language is ambiguous and was not intended to cover driving under the influence, that it cannot be shown that Mr. Jackson's intoxication caused the accident, that the decision was not reasoned or principled because it was possible that Mr. Jackson was not driving under the influence, and that Nucor has a conflict of interest as the administrator of a self-funded plan. (Dkt. No. 26.) However, a review of the

determination under the *Booth* factors demonstrates that Nucor's determination was reasonable and must be affirmed.

The plain language of the plan excludes "Any condition, disability or expense sustained *as a result of being engaged in*: an... *illegal act*...." Plaintiff argues this language is ambiguous and the purpose of the plan was not to exclude injuries caused by non-violent acts. However, this is contrary to a plain reading of the 2014 Plan in light of South Carolina law, which makes it illegal to drive a motor vehicle with an alcohol concentration above 0.08%. *See* S.C. Code Ann. § 56-5-2933. Furthermore, while not construing South Carolina law, Courts of Appeal have held that driving under the influence constitutes an "illegal act" under ERISA plans with similar language. *See Jimenez v. Sun Life Assur. Co. of Canada*, 486 F. App'x 398, 410 (5th Cir. 2012) (finding that the plan "reasonably interpreted" the term "illegal acts" in the policy to include "driving under the influence"); *Tourdot v. Rockford Health Plans, Inc.*, 439 F.3d 351, 354 (7th Cir. 2006) (where claimant had been driving with blood alcohol level above the legal limit, court held that "[t]he phrase 'illegal acts' has a plain meaning; it simply refers to any activity contrary to law.").

The Court finds that Nucor had adequate materials supporting their decision, and that the decision was reasoned, principled and consistent with the 2014 Plan. BCBSSC had ample documentation on which to support their determination that Mr. Jackson's injuries resulted from intoxication. BCBSSC relied on a blood test taken at the hospital showing a blood alcohol level far above the legal limit, a police report of the incident stating that Mr. Jackson was driving under the influence and had struck a turning vehicle in front of him in his lane, an affidavit showing that Mr. Jackson had initially been charged with driving under the influence for the incident, and the medical opinions of two doctors. These documents provide substantial evidence that Mr. Jackson was intoxicated at the time of the accident, and the accident was caused by his intoxication. *See*

*Tourdot v. Rockford Health Plans, Inc.*, 439 F.3d 351, 352 (7th Cir. 2006) (affirming denial of coverage for driving under the influence based on blood alcohol level from breathalyzer test and a blood test in an emergency room).

Nor was it improper for BCBSSC to not credit the one-page accident reconstruction prepared for Mr. Jackson that remarked that he "had proper and full control of the motorcycle" prior to the crash. (Dkt. No. 27-1 at 36.) Palmetto Health argues that because of this opinion and because the insurer of the second car paid benefits to Mr. Jackson, Nucor could not determine that Mr. Jackson's intoxication caused the accident, and thereby his injuries. This is incorrect. There is ample evidence in the record on which BCBSSC could determine that Mr. Jackson's intoxication caused the accident, including a police report stating that Mr. Jackson was driving under the influence, was behind the second car, and struck the car while swerving onto the opposite side of the road. Furthermore, at least one court has recognized that an "illegal acts" exclusion can apply where driving under the influence "contributed" to the accident causing the injuries. *See Jimenez v. Sun Life Assur. Co. of Canada*, 486 F. App'x 398, 412 (5th Cir. 2012) ("we conclude that [the plan] based its decision on relevant evidence that 'a reasonable mind might accept as adequate to support' its conclusion that [the claimant's] alleged DUI offense 'contributed' to the accident that caused his disability."). Therefore, it was not an abuse of discretion for BCBSSC to determine that the accident was caused by Mr. Jackson's intoxication.

Palmetto Health further faults Nucor for failing to distinguish between blood drawn for medical purposes and blood drawn for legal analysis, and for relying on the medical opinions of two doctors who were not experts in toxicology. To begin with, much of the evidence Palmetto Health submitted was not presented to the plan administrator, and therefore was not part of the administrative record and not part of this Court's review. *See Elliott v. Sara Lee Corp.*, 190 F.3d

601, 608 (4th Cir.1999) ("assessment of the reasonableness of the administrator's decision must be based on the facts known to [the administrator] at the time."). More fundamentally, Palmetto Health seems to argue that to deny benefits under the illegal act exclusion, Nucor required evidence sufficient to convict Mr. Jackson. However, that is not the standard of review here. Nucor did not need evidence sufficient to support a criminal conviction. *See Carter v. ENSCO Inc.*, 438 F. Supp. 2d 669, 674 (W.D. La. 2006) ("Plaintiff's argument that the Plan Administrator must have evidence sufficient to support a criminal conviction is without merit."). The test is for substantial evidence, not beyond a reasonable doubt. Therefore, it was not an abuse of discretion for BCBSSC to rely on a police report, Mr. Jackson's affidavit admitting he had been charged with driving under the influence, a hospital blood test and the opinions of two medical doctors to determine that Mr. Jackson had been intoxicated at the time of the accident.

The procedural and substantive requirements of ERISA were met here. ERISA requires a plan to "(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reason for such denial" and a reasonable opportunity to appeal the decision denying their claim. 29 U.S.C. § 1133. ERISA protects "contractually defined benefits," but it does not "regulate the substantive content" of health plans. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 752 (1985). Here, Palmetto Health received notice and a detailed opinion on why their claims were denied, and an opportunity to present evidence and appeal that determination. The reliance on two medical doctors was proper, especially where one doctor had close to two decades of experience in emergency room practice. Furthermore, the doctor addressed Palmetto Health's arguments regarding the hospital blood test and calculated Mr. Jackson's likely whole blood alcohol level.

Finally, any conflict of interest does not affect the reasonableness of the determination by Nucor. Conflicts of interest are not dispositive, and instead a court must "tak[e] into account any conflict of interest as one of the factors considered in determining reasonableness." *See Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 359 (4th Cir. 2008). Palmetto Health argues that Nucor is the administrator of the self-funded plan, giving rise to concerns about its incentives when reviewing claims. However, Nucor hired a third-party, BCBSSC, to manage the health care and claims administration services of the plan. (*Id.* at 146 – 147.) Of note, in *Champion*, the court found "no evidence raising a concern that would increase the weight of the conflict" and affirmed a district court's decision where the plaintiff's "initial claim was denied by a [third party administrator] which lacked a direct financial interest in the matter." *Champion*, 550 F.3d at 362. Therefore, while it is true that Nucor acted as fiduciary, administrator, and the sole-funder of the Plan, the role of the conflict did not affect the reasonableness of the decision where it adopted the well-reasoned determination of their third-party administrator.

Therefore, Nucor's denial of benefits not an abuse of discretion and rather was the result of a deliberate, principled reasoning process supported by substantial evidence.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Judgment (Dkt. No. 28) and **DENIES** Plaintiff's Motion for Judgment (Dkt. No. 26).

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

October 25, 2018
Charleston, South Carolina